```
1              IN THE UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF ARKANSAS
2                       WESTERN DIVISION

3  UNITED STATES OF AMERICA,

4                    Plaintiff,

5   v.                                  No. 4:11CR00062-01 BRW

6                                       January 27, 2012
                                        Little Rock, Arkansas
7                                       1:41 p.m.
   JASON BARNWELL,
8
                     Defendant.
9

10              TRANSCRIPT OF SENTENCING HEARING
                BEFORE THE HONORABLE BILL WILSON,
11                UNITED STATES DISTRICT JUDGE

12  APPEARANCES:

13  On Behalf of the Government:

14     CINDY CHUNG, Assistant U.S. Attorney
         U.S. Department of Justice-Civil Rights-Criminal Section
15       950 Pennsylvania Avenue NW
         Room 5134
16       Washington, D.C.  20530

17     JANE W. DUKE, Assistant U.S. Attorney
         U.S. Attorney's Office - Little Rock
18       Eastern District of Arkansas
         Post Office Box 1229
19       Little Rock, Arkansas  72203

20  On Behalf of the Defendant:

21     MISTY WILSON BORKOWSKI, Attorney at Law
         James, Carter & Coulter, P.L.C.
22       Post Office Box 907
         Little Rock, Arkansas  72203
23

24      Proceedings reported by machine stenography and displayed
   in realtime; transcript prepared utilizing computer-aided
25 transcription.
```

Karen Baker, RMR, CRR, CCR
United States Court Reporter

P R O C E E D I N G S

(Proceedings commencing in open court at 1:42 p.m.)

THE COURT: Good afternoon. Be seated, please. We're here for sentencing today in United States of America against Jason Barnwell, Case Number 4:11CR00062-01-BRW. Mr. Barnwell's here with his lawyer, Ms. Borkowski. The prosecution is represented by Ms. Chung and Ms. Duke. Parties ready?

MS. BORKOWSKI: Yes, Your Honor.

MS. DUKE: Yes, Your Honor.

THE COURT: All right. I'm going to give the background on how the case got here. Mr. Barnwell was charged in six counts of a seven-count indictment as follows: Count 1, conspiracy to injure, oppress, threaten, and intimidate Lamar Wright in the free exercise of his constitutional rights; Count 2, aiding and abetting an attempt to intimidate with the use of a dangerous weapon and fire; Count 3, aiding and abetting the possession of an unregistered destructive device; Count 4, aiding and abetting the use of fire to commit a felony offense; Count 5, aiding and abetting the possession of a destructive device in furtherance of a crime of violence; Count 7, felon in possession of a firearm.

On August 26 of last year, Mr. Barnwell appeared with Ms. Borkowski, and under Rule 11(c)(1)(A) and (B), entered into a plea agreement and he pled guilty to Counts 1, 4, and 7 of

| | |
|---|---|
| 1 | the indictment.  Do I have that right? |
| 2 | MS. CHUNG:  Yes, Your Honor. |
| 3 | THE COURT:  The parties stipulated as follows:  Base |
| 4 | offense level determined under Guideline 2H1.1; the offense |
| 5 | level on Count 1 is subject to a three-level increase under |
| 6 | Guideline Section 3A1.1(a); a two-level increase is applied |
| 7 | under Guideline 3B1.1(c); the offense level as to Count 4 is |
| 8 | determined under Guideline Section 2K2.4(a), which is the |
| 9 | guideline sentence required by statute; and the offense level |
| 10 | for Count 7 is determined by Guideline Section 4B1.4.  And is |
| 11 | there a motion for a third level? |
| 12 | MS. CHUNG:  Yes, Your Honor. |
| 13 | THE COURT:  All right.  For acceptance of |
| 14 | responsibility, he gets the three points off.  Mr. Barnwell, |
| 15 | are you satisfied with your lawyer? |
| 16 | THE DEFENDANT:  Yes, sir, I am. |
| 17 | THE COURT:  100 percent? |
| 18 | THE DEFENDANT:  Yes, sir. |
| 19 | THE COURT:  In determining a sentence, I'll consider |
| 20 | the factors in 18, U.S.C., Section 3553 and the other |
| 21 | applicable statutes and the sentencing guidelines.  We'll work |
| 22 | through and find out what the sentencing guideline range is and |
| 23 | I will use that as a guide, a guide only.  We're going to go |
| 24 | over the presentence report and I know there's some objections. |
| 25 | I'll resolve those and then we'll work through and see what the |

```
 1  guideline range is and what the applicable statutes say.
 2       After we've done that, Ms. Borkowski can speak on your
 3  behalf, Mr. Barnwell, and you can speak if you want to, but
 4  only if you want to.  And if you choose to remain silent, I
 5  won't hold it against you.  And then Ms. Chung or Ms. Duke will
 6  get to close for the prosecution.
 7       Have both sides had all the time they need to review the
 8  presentence report?
 9            MS. BORKOWSKI:  Yes, Your Honor.
10            MS. CHUNG:  Yes, Your Honor.
11            THE COURT:  All right.  I'm going to go over the
12  objections that I have here and if there are others, you need
13  to raise them orally, need to raise them viva voce.  The
14  defendant objects to the standard language statement regarding
15  "this will include the dismissed counts".  I sustain that part
16  of the objection.  As to the language that the underlying
17  offense was attempted arson rather than a civil rights
18  violation, do you have anything to say on that other than what
19  you've said in writing?
20            MS. BORKOWSKI:  No, Your Honor, we'll rely on our
21  brief.
22            THE COURT:  All right.  I believe it was arson in
23  nature and I find against you, and I note your objection and
24  save your exception.  Objection number 2, I believe, pertains
25  to paragraphs 16, 21, 29, 31, 32, 33, 34, and 35 of the
```

1  presentence report.  And the defendant objects to the
2  calculation under Guideline 2K rather than 2H1.1(a)(2) or (3).
3  In other words, you want -- as I understand it, you think I
4  should have put it under the civil rights statute rather than
5  arson; is that correct?
6           MS. BORKOWSKI:  Yes, Your Honor.
7           THE COURT:  Do you have anything else to add?
8           MS. BORKOWSKI:  No, Your Honor.  We'll rely on our
9  brief.
10          THE COURT:  I overrule your objection, but I save
11 your exception.  Paragraph 44 of the presentence report, the
12 defendant objects to the use of a police offense report.  Is
13 there an affidavit too, I believe?  Or just a report?
14          MS. CHUNG:  I believe it's just the report, Your
15 Honor, but perhaps probation can speak.
16          THE PROBATION OFFICER:  It's just an offense report.
17          THE COURT:  Okay.  Then objection to the recitation
18 of the facts in that report.  What says the defense on that?
19 Have anything to add?
20          MS. BORKOWSKI:  No, Your Honor.  It's just a
21 statement from the police that's not been verified and it was
22 included in the police records.
23          THE COURT:  Am I not entitled to hear hearsay at a
24 sentencing hearing?
25          MS. BORKOWSKI:  Your Honor, I think that the

1  statements in this report -- it was several misdemeanor
2  charges, and the statements in the report are substantially
3  above and beyond inflammatory and we would ask that it not be
4  contained in the presentence report.
5        THE COURT:  What says the prosecution?
6        MS. CHUNG:  Your Honor, the probation is entitled to
7  rely on this report as part of its presentence report and if
8  these are inflammatory in nature, it's solely by nature of the
9  fact that the defendant actually said them.  That's not a
10 reason to not include it in the report.  So the government's
11 position is that it should remain, as police reports are
12 generally considered business records with reliable statements
13 in them.
14       THE COURT:  Overrule the objection, save your
15 exception.  I'm always a little uncomfortable with hearsay, but
16 the guidelines expressly say you can do it, and a police
17 report, under some circumstances, leaves it admissible and it's
18 generally considered a little more reliable than garden variety
19 hearsay, so I'm going to overrule the objection.  I adopt the
20 report with the exception of that one objection I sustained.
21 If either side appeals the sentence, it'll be released to the
22 lawyers of the parties without further orders of the Court.
23    I'm going to try to determine the guideline range here.
24 And if I make a misstatement here, I ask the lawyers to
25 interrupt me.  Base offense level under the guidelines, 24.

1  Guideline for violation of 18, United States Code, Section 241
2  is found in Guideline 2H1.1 and (a)(1) of that section
3  establishes the offense level from the offense guideline
4  applicable to any underlying offense.  The guideline for the
5  underlying offense, which I've found to be arson, is found in
6  Guideline 2K1.4, and (a)(1) establishes a base offense level of
7  24.
8       As referenced in paragraph 12 of the presentence report,
9  the victims in this case were selected based on their mixture
10 of race, and in view of this, he gets a three-level enhancement
11 under Guideline Section 3A1.1(a).  And then he was an
12 organizer, leader, manager or supervisor of the criminal
13 activity and he gets a two-level enhancement under Guideline
14 Section 3B1.1(c).  That brings us for Count 1 up to 29.
15      Count 4, the base offense level for a violation of 18,
16 United States Code, Section 844(h) is found in Guideline 2K2.4
17 which requires the minimum term of imprisonment to be ten
18 years.
19      Under Count 7, a violation of 18, United States Code,
20 Section 922(g)(1) is found in Guideline 2K2.1, and since he
21 committed this instant offense after sustaining two felony
22 convictions for crimes of violence, the base offense level is
23 24.  Then we have the multiple count adjustment.  Count 1
24 adjusted offense level for 29 units is 1; Count 7 for 24 is one
25 and a half.  Total number of units, 1.5.  Greater of the

Case 4:11-cr-00062-BRW   Document 181   Filed 03/01/12   Page 8 of 20

8

1  adjusted offense level above is 29.  Increase in offense level
2  under Section 3D1.4 is 1.  So combined adjusted offense level
3  is 30, and I believe the total offense level is 28.
4       Chapter 4 enhancements, under Guideline Section 4B1.4, a
5  defendant is an armed career criminal if he is subject to an
6  enhanced sentence under the provisions of 18, United States
7  Code, Section 924(e).  As referenced in paragraph 40, 41, and
8  43 of the presentence report, he has three convictions for
9  violent felonies committed on separate dates at the time he
10 committed the instant offense.  Under Guideline 4B1.4(b)(3)(B),
11 his base offense level is 33 and adjustment for acceptance of
12 responsibility drops that by three, brings him to 30.  His
13 criminal history category is VI.  That's Roman numeral VI,
14 based on the criminal history from chapter 4.  Total offense
15 level of 30.
16      Under Count 1, the statutory maximum for imprisonment is
17 not more than ten years.  Under the guidelines, for a total
18 offense level of 30 and a criminal history category of VI, the
19 guideline range is 168 to 210 months.  Under Count 4, statutory
20 max is ten years consecutive to any other sentence imposed.
21 Guidelines, same.  Count 7, statutory max is not less than 15
22 years and not more than life.  Guideline based on the armed
23 career criminal statute, the guideline imprisonment range would
24 be 180 months to 210 months.  Supervised release under Count 1,
25 not more than three years under the statute, not less than one

Karen Baker, RMR, CRR, CCR
United States Court Reporter

```
 1  year under the guidelines.
 2       Under Count 4 under the statute, not more than three
 3  years, not less than one year under the guidelines.  On Count
 4  7, not more than five years.  Under the guidelines, not less
 5  than two years.  Probation is not applicable.  I'm not going to
 6  talk about maximum fines because the financial report indicates
 7  that he couldn't pay a lump sum or installment fine.  I believe
 8  there's restitution in the amount of $1500 which is joint and
 9  several with Gary Dodson, Jake Murphy, and Dustin Hammond.  Is
10  that right?
11            MS. CHUNG:  Yes.
12            THE COURT:  All right.  Any objections to my
13  interpretation of the sentencing options, any objections not
14  already made?
15            MS. BORKOWSKI:  None, save previously made
16  objections, Your Honor.
17            MS. CHUNG:  None, Your Honor.
18            THE COURT:  I forgot to say the special penalty
19  since there's three counts is $300 total, 100 each.  You can
20  address me.  If you don't mind, come to the lectern, please.
21  If your client wants to speak -- by the way, I've read all the
22  letters.  I appreciate them.
23            MS. BORKOWSKI:  Thank you, Your Honor.  Your Honor,
24  I think that in this case that my client is already looking at,
25  based on the statutory minimums, as you've already pointed out,
```

1  25 years for these offenses.  We'll rely on the sentencing
2  memorandums and the recitation of family history, education
3  level, and where Mr. Barnwell is today in his situation.  We do
4  have one individual that submitted a letter but also if the
5  Court would allow us to submit a short statement to the Court
6  on Mr. Barnwell's behalf.
7             THE COURT:  Surely.  Just have them come to the
8  lectern.
9             MS. BORKOWSKI:  Okay.  Thank you.
10            THE COURT:  Would you state your name for the
11 record, please, sir.
12            CHARLES GREGORY:  Charles Gregory.  I've known Jason
13 since about April now.  I was there when he accepted Christ.  I
14 don't know his previous life or anything, I just know where
15 he's come since then.  And he's been very instrumental in
16 leading guys to the lord in jail.  And as far as the racist
17 thing, I've not seen it because I see him hugging on people
18 that are mixed race and all this.  Hearing this about him, it
19 paints a different picture, but I know him as the man he is
20 today, not who he was.
21            THE COURT:  I appreciate you coming, Mr. Gregory.
22 Where do you live?
23            CHARLES GREGORY:  In Birdtown, Arkansas.
24            THE COURT:  That's over west of Clinton, isn't it?
25            CHARLES GREGORY:  Yes, north of Morrilton.

1   THE COURT: Thank you.
2   MS. BORKOWSKI: Your Honor, I guess also
3   Mr. Barnwell would like to make a statement to the Court at
4   this time.
5   THE COURT: That's fine.
6   THE DEFENDANT: Your Honor, I ask you to kind of be
7   patient with me if you would. I'm not going to try and
8   minimize any of the things that I've done. I'm kind of a
9   prideful man so it chokes me up and it tears me up, being up
10  here kind of --
11  THE COURT: Don't worry about that. We're not in a
12  rush. Take your time. You need a glass of water?
13  THE DEFENDANT: Yes, sir.
14  THE COURT: Get him a glass of water.
15      Just take some deep breaths and take your time.
16  THE DEFENDANT: For a long time now, and I'm not one
17  to -- obviously, from my past, I'm not a liberal, I'm not one
18  to blame my upbringing or use my folks as an excuse. For a
19  long time, I was a victim from the time that I was a child and
20  I've always hated bullies. I've hated the sort that victimized
21  folks. And at some point in trying to be able to defend
22  myself, I ended up becoming the same kind of person that I grew
23  up hating. I've never had a father figure and the only people
24  I've had for father figures are the men and women that I've met
25  at the jail that I got put into.

1      If I had stayed at Pulaski, I got no doubt nothing would
2 have changed.  I wouldn't have made any sort of effort.  I've
3 done a lot of time in my life.  I did almost 11 calendars down
4 in Texas.  Did it help me?  No, sir.  It didn't rehabilitate
5 me.  It hardened me into the way I was.  I've never been one to
6 sit there and claim a jailhouse bait for the sake of claiming
7 it for whatever benefit I may gain or what people would think
8 of me.  If I cared what people thought of me, I wouldn't have
9 been running around for the last 20 years as a devout racist.
10 I really don't know what to tell you.
11      I mean, I didn't come up here with any planned speech.
12 My lawyer, she asked me do you want to write a letter to the
13 judge, you don't have to go up there.  And I just figured I'd
14 come and I'd speak from the heart because I'm a
15 straight-forward individual.  I figure you've been on the bench
16 long enough you can tell whether or not someone's blowing smoke
17 at you.
18           THE COURT:  I don't know whether I can or not, but I
19 don't believe you are.
20           THE DEFENDANT:  I'm not.  I understand the need for
21 punishment, I've got no problem with that.  I honestly don't.
22 When I did it, I was drunk.  Had I not been drunk, I'd feel
23 safe in saying that Mr. Steve Burrows back there would tell you
24 that when I'm not drunk, I'm not a violent man.  But when I am
25 drunk, I tend to extreme to violence.  That said, it's not an

1  excuse either.  Because had I not been steeped in the ideology
2  that I was steeped in, worst I would have done is went out and
3  beat up some small mouth on the creek and that'd been the
4  extent of it.
5      If I could do anything to make it right with these
6  people, I would.  If I could take it back, I would.  The fact
7  of the matter remains that I can't.  But I'm at a better place
8  personally than I was when I came in here, I'm a better man for
9  it.  And if I can go on the record as saying anything else --
10         THE COURT:  We're in no hurry.
11         THE DEFENDANT:  Everyone I've met for the most part
12 since this whole ordeal has begun has been nothing but
13 wonderful and civil.  From these marshals here, they recognize
14 me every time I come walking up in here, from my lawyer, who I
15 harangued in the beginning when I didn't have a lick of sense
16 in my head, to those two federal agents back there who would
17 tell you when they first met me, I was not the most
18 cooperative, most civil-toned man that they'd met, to my
19 brother-in-law back there, who I've given more than his fair
20 share of poop, for lack of a better term.  And the man back
21 there and woman, who have come to be close people in my family
22 that I've got out here.
23     All the way around, going to that county jail and this
24 happening to me, irregardless of whatever you sentence, I don't
25 care.  This is the best thing that could have happened for me

1 because it gave me a chance to at least maybe go in there and
2 get some sort of education, try and better myself so if I do
3 get out, I can rectify about 20 some odd years of wrongs.
4 That's all I have to say, Your Honor.
5         THE COURT: Thank you, sir. If y'all will step to
6 one side or the other, I'll hear from the prosecution.
7         MS. CHUNG: Your Honor, I believe that before when
8 we had mentioned the 25 years, technically, the sentence could
9 be as low as 24 years if the defendant were sentenced to the
10 minimum on Count 1. The Count 4 only has to run consecutive to
11 Count 1 since Count 7 is not an underlying offense of Count 4.
12 The government would request the lower end of the guideline
13 range. This is an extremely serious offense where the
14 defendant and his co-defendants, as you know, because of the
15 interracial nature of the couple, went and threw three Molotov
16 cocktails at the home, one which actually entered the home and
17 caused the house to catch fire. The defendant does have an
18 extremely serious --
19         THE COURT: Let me interrupt you. Are you saying
20 the minimum is 24 years rather than 25?
21         MS. CHUNG: I believe so, Your Honor. Count 4 is to
22 run consecutive to the underlying offense, so the use of fire
23 to commit a felony, the 10 years should be consecutive to the
24 felony for which it was committed, which would be Count 1.
25 Count 7, the possession of the firearm, that firearm was not

1  used in any way.  That was related to Count 4.  So I believe
2  the ten years would run consecutive to Count 1.
3          THE COURT:  Count 1 would be how many months then
4  under your calculation?
5          MS. CHUNG:  Well, the minimum is 168 months.
6          THE COURT:  168?
7          MS. CHUNG:  Yes, Your Honor, which is 14 years.  So
8  if you added the ten of Count 4 to the 14 years, it would
9  actually result in a --
10         THE COURT:  I have your theory now.
11         MS. CHUNG:  Okay.  The defendant does have a serious
12 criminal history.  The defendant did plead guilty, though, and
13 has been cooperating with the government.  We're not moving for
14 any downward departure at this time.  I believe the cooperation
15 is not yet complete, but we do expect to make a motion in the
16 future after sentencing.  So, at this time, the government
17 would request the low end of the guideline range based on the
18 seriousness of the offense balanced with the defendant's plea
19 of guilty and his cooperation.
20         THE COURT:  All right. Y'all come back around,
21 please.  My sentence now, of course, will be without
22 consideration of the cooperation because I'll consider that if
23 it comes up before me.  Mr. Barnwell is committed to the
24 custody of the Bureau of Prisons for imprisonment of -- I
25 believe Count 7 you say 168 months is the minimum?

1    MS. BORKOWSKI:  Yes, Your Honor.  Apparently, I
2    mean, it's not required to be served consecutively.
3    MS. CHUNG:  I'm sorry, if I could just clarify.  I
4    think the --
5    THE COURT:  Come back up if you will.  My
6    understanding is it has to run consecutive.
7    MS. CHUNG:  Yes, Your Honor, but I just wanted to
8    clarify.  It was Count 4, I think, that has to run consecutive,
9    which is the ten-year sentence.
10    THE COURT:  Right.
11    MS. CHUNG:  And it would have to run consecutive to
12    Count 1, and then Count 7 is its own 15-year minimum.  That's
13    my understanding.
14    THE COURT:  We're going to take a recess, I'm going
15    to work on this.
16    MS. BORKOWSKI:  Thank you, Your Honor.
17    THE COURT:  We're in recess for about ten minutes.
18        (Recess from 2:10 p.m. until 2:22 p.m.)
19    THE COURT:  I ask you to follow along carefully.
20    The guideline as I understand it on Count 1 is 168 to 210
21    months.  Agreed?
22    MS. CHUNG:  Agreed.
23    MS. BORKOWSKI:  Yes, Your Honor.
24    THE COURT:  All right.  That's above the statutory
25    maximum which is ten years, or 120 months.  Count 4 is ten

1  years consecutive to Count 1.  So Count 1 plus Count 4 is 240
2  months, 20 years.  Count 7 is 15 years concurrently with Counts
3  1 and 4.  So this would give him a total of 20 years, 240
4  months.  Is that correct?
5        MS. BORKOWSKI:  Yes, Your Honor.
6        MS. CHUNG:  Yes, Your Honor.
7        THE COURT:  As the non-lawyers in the courtroom
8  probably recognize, the guidelines are extremely complex.  As a
9  matter of fact, when I take a guilty plea, I always ask the
10 defendant if they understand the guidelines in a general way,
11 because that's the way I understand them, in a general way.
12 And I am now satisfied that we have the guideline and the
13 statutes meshed properly.
14     All right.  That is the sentence of the Court on the
15 incarceration.  There'll be no fine.  Restitution $1500, joint
16 and several with Mr. Dodson, Murphy, and Hammond.  I recommend
17 that Mr. Barnwell participate in residential substance abuse
18 treatment and educational and vocational programs during
19 incarceration.  Supervised release of five years following
20 imprisonment with the following special conditions.  He'll be
21 required to participate under the guidance and supervision of
22 the probation officer in a substance abuse treatment program
23 which may include testing, outpatient counseling, and
24 residential treatment.
25     Furthermore, he must abstain from the use of alcohol in

1  the course of any treatment.  This is based on alcohol abuse
2  indicated in the presentence report.  He has to cooperate in
3  the collection of DNA, cooperate with the probation office.  He
4  must participate in mental health counseling under the
5  supervision of the probation office.  He has to disclose any
6  and all financial information during the supervised release on
7  request of the probation office.
8      No new lines of credit can be established without prior
9  approval of the probation office until all criminal penalties
10 have been satisfied.  No fine, as I said earlier.  Restitution
11 is mandatory in the amount of $1500 at an address that will be
12 provided by the U.S. Attorney at the time of sentencing, which
13 will be immediately, and is payable during incarceration and
14 supervised release.  During incarceration, he must pay
15 50 percent of all funds that are available to him.  During
16 residential reentry, payments will be reduced to 10 percent of
17 his gross monthly income.  Beginning the first month of
18 supervised release, they'll be 10 percent of his gross monthly
19 income.  Interest is waived.
20     As I said, restitution is joint and several with Gary
21 Dodson, Jake Murphy, Dustin Hammond, and any other person that
22 might be convicted on an offense which would require
23 restitution for the same victim and the same loss.  Special
24 penalty $100 each on each count, total of $300.  Are there any
25 objections to the form of the sentence?

1         MS. BORKOWSKI:  No, Your Honor.
2         MS. CHUNG:  No, Your Honor.
3         THE COURT:  All right.  Mr. Barnwell, I want to talk
4  about your appeal rights now.  You have a right to appeal your
5  conviction if you believe your guilty plea was somehow
6  involuntary or there was some other fundamental defect in the
7  proceeding that was not waived by your guilty plea.  You also
8  have a statutory right to appeal your sentence under certain
9  circumstances, particularly if you think the sentence is
10 contrary to law.  With very few exceptions, a notice of appeal
11 must be filed within 14 days of judgment being entered in your
12 case, which will be either today or next week more than likely,
13 but whenever it's entered, you have 14 days within which to
14 file a notice of appeal or you lose your right to appeal.  If
15 you can't afford a lawyer, you can apply to appeal as a pauper,
16 and if you'll ask the clerk of the court, if you want to file a
17 notice of appeal, the clerk will file it for you.  Is there
18 anything else we need to tend to?
19         MS. BORKOWSKI:  Your Honor, the only thing I would
20 like to ask is that the Court make a recommendation that the
21 Bureau of Prisons send him to a facility near his mother's
22 residence in North Carolina.
23         THE COURT:  Prosecution have any objection?
24         MS. CHUNG:  No, Your Honor.
25         THE COURT:  I'll make that recommendation.

1          MS. BORKOWSKI:  Thank you.
2          THE COURT:  Is there anything else?
3          MS. BORKOWSKI:  Nothing, Your Honor.
4          MS. CHUNG:  Not from the government, Your Honor.
5          THE COURT:  Thank y'all for your time.  We're in
6    recess.  You can be at ease.
7       (Proceedings adjourned at 2:27 p.m.)
8                     C E R T I F I C A T E
9       I, Karen Baker, Official Court Reporter, do hereby certify
10   that the foregoing is a true and correct transcript of
11   proceedings in the above-entitled case.
12
13
14
15   /s/ Karen Baker, RMR, CRR, CCR
     --------------------------------         Date: March 1, 2012
16   United States Court Reporter